IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

I.T., by and through his          )     CIVIL NO. 11-00676 LEK-KSC
parents Renee and Floyd T.,       )
                                  )
          Plaintiffs,             )
                                  )
     vs.                          )
                                  )
DEPARTMENT OF EDUCATION,          )
STATE OF HAWAII,                  )
                                  )
          Defendant.              )
_____   )

**ORDER REVISING THE HEARINGS OFFICER'S JUNE 5, 2013**
**DECISION ON REMAND, AND AWARDING COMPENSATORY EDUCATION**

          Before the Court is an appeal by Plaintiffs I.T.

("Student"), by and through his parents Renee and Floyd T.[1]

("Plaintiffs"), of the Administrative Hearings Officer's

("Hearings Officer") June 5, 2013 Remanded Decision Subsequent to

U.S. District Judge Leslie Kobayashi's September 10, 2012 Amended

Order Affirming in Part, and Vacating and Remanding in Part, the

Hearings Officer's October 6, 2011 Decision ("Decision on

Remand").  Plaintiffs filed their Opening Brief re Decision on

Remand ("Opening Brief") on August 19, 2013.  [Dkt. no. 62.]

Defendant Department of Education, State of Hawai`i ("Defendant"

or "the DOE") filed its Answering Brief on October 3, 2013, and

Plaintiffs filed their Reply Brief re Decision on Remand ("Reply

Brief") on October 16, 2013.  [Dkt. nos. 65, 66.]  The Court

_____

          [1] The Court will refer to Renee T. as "Mother" and to
Renee T. and Floyd T. collectively as "Parents".

heard oral argument in this matter on November 25, 2013. Appearing on behalf of Plaintiffs was John Dellera, Esq., and appearing on behalf of Defendant was James Raymond, Esq.  After careful consideration of the briefs, the arguments of counsel, and the relevant legal authority, the Decision on Remand is HEREBY REVERSED for the reasons set forth below, and this Court HEREBY AWARDS Plaintiffs a compensatory education award of $44,335.53.

## BACKGROUND

### I.   Procedural History in the United States District Court

Plaintiffs filed their Complaint on November 4, 2011 pursuant to the Individuals with Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1400 *et seq.*  Plaintiffs appealed from the Hearings Officer's October 6, 2011 Findings of Fact, Conclusions of Law and Decision ("Decision") dismissing Plaintiffs' Request for Impartial Due Process Hearing.  On September 11, 2012, this Court issued its Amended Order Affirming in Part and Vacating and Remanding in Part the Hearings Officer's October 6, 2011 Decision ("9/11/12 Order").  [Dkt. no. 31.[2]]   On October 3, 2012, this Court stayed the case pending the resolution of the issues on remand.  [Dkt. no. 33.]

After the Hearings Officer issued his Decision on Remand, this Court granted the parties' joint request to lift the

---

[2] The 9/11/12 Order is also available at 2012 WL 3985686.

stay and granted Plaintiffs leave to file an amended complaint to include their appeal from the Decision on Remand.  Plaintiffs filed their First Amended Complaint on July 5, 2013.  [Dkt. no. 52.]

II.   **Factual and Administrative Background**

The factual and procedural background relevant to the original administrative proceedings is set forth in the 9/11/12 Order, which states:

> 1) the Court CONCLUDES that Defendant violated the IDEA by failing to evaluate Student for [Central Auditory Processing Disorder ("CAPD")] after the March 3, 2009 [Individualized Education Program ("IEP")] team meeting, but the Court also CONCLUDES that the violation did not result in a denial of [a Free Appropriate Public Education ("FAPE")] because the evidence ultimately established that Student did not have CAPD;
>
> 2) the Court CONCLUDES that the failure to address Student's speech/language needs, both in the provision of services and in the creation of . . . appropriate goals and objectives, in the March 3, 2009 IEP and in the [February] 26, 2010 IEP constituted a denial of FAPE; and
>
> 3) the Court CONCLUDES that compensatory education is the appropriate relief for the denial of FAPE and the Court REMANDS this matter to the Hearings Officer to conduct further proceedings to determine the form of the compensatory education.

2012 WL 3985686, at *25.

On March 27, 2013, the Hearings Officer conducted the hearing on remand "to determine the appropriate compensatory

education award." [Decision on Remand at 5.[3]]

The Hearings Officer emphasized that: 1) the March 3, 2009 IEP and the February 26, 2010 IEP denied Student a FAPE because they did not offer Student speech-language services; and 2) the August 23, 2010 IEP, which this Court ruled offered Student a FAPE, offered Student sixty minutes per week of speech-language services in pull-out sessions. [Id.] Based on this Court's rulings, the Hearings Officer found that "Student needed, but was not offered, speech-language services . . . from March 3, 2009 until August 30, 2010. This is approximately 1 year, 6 months." [Id. at 6.]

Based on the testimony and evidence presented in conjunction with the hearing on remand, the Hearings Officer found that Student was enrolled at Loveland Academy ("Loveland") for approximately one year and nine months, from November 2010 to July 2012. Mother testified that, after attending Loveland: Student's communication, reading, writing, and speech improved; he was able to play with others; he shut down less often and for shorter periods of time; he became more assertive and had less anxiety; his grades improved; he was able to self-advocate; and he was able to complete assignments with the help of a skills trainer. [Id.]

---

[3] The Decision on Remand is available in the Administrative Record on Appeal for the proceedings on remand, filed August 1, 2013 ("Remand ROA"), at 95-110.

4

During the hearing on remand, DOE speech language pathologist, Jeanne Iwashita, testified as an expert in speech pathology.  She evaluated Student on May 8, 2012 and opined that Student has social needs, not communication needs, and she also opined that he did not require speech-language services.  If speech-language services were offered, Iwashita recommended fifteen minutes per week of direct services, and fifteen minutes per week of consultive services.  Further, she opined that providing speech-language services when they are not necessary could be detrimental because of the time that the student is removed from the classroom and the stigma of receiving special education services.  In addition, Iwashita opined that speech-language services can be provided without mental health services.  Iwashita testified that Student needs counseling and reading services.  [Id. at 6-7.]

The Hearings Officer noted that Mother was unable to attend Student's September 13, 2012 IEP meeting due to scheduling problems.  She agreed with the IEP's present levels of educational performance ("PLEPs") except for the PLEP stating that Student did not have communication needs at that time.  Mother testified that the September 13, 2012 IEP should have provided Student with speech-language services.  [Id. at 7-8.]

John Loveland, the school's clinical director, testified about Student's initial assessment at the school and

the development of Student's transdisciplinary treatment plan, which included mental health services and speech-language services.  He testified that all services at Loveland are integrated, and therefore services are not considered separately. He did, however, note that Student received one or one-and-a-half hours of pull-out speech-language services per week. John Loveland also provided testimony about Student's progress at Loveland.  He observed similar improvements in Student as those that Mother described during her testimony before the Hearings Officer.  [Id. at 8-10.]

The Hearings Officer made the following findings regarding Loveland's charges:

> 106. In his March 18, 2013 declaration (Petitioner's Exhibit 38), the clinical director states, in part, "While many services are provided in a transdisciplinary manner, all contributing treatment programs (described below) come under a mental health umbrella, because ([Loveland]) is a Community Based Day Mental Health Treatment Center." . . .
>
> 107. The March 18, 2013 declaration of [Loveland's] biller, states, in part, that "(Student) attended ([Loveland]) from July 2010 to July 2012. According to ([Loveland])'s records that are kept in the ordinary course of business, unpaid invoices for services provided to (Student) . . . $329,184.42." See, Petitioners' Exhibit 39.  Contrary to Mother's testimony that Student was enrolled at [Loveland] in November 2010, the attachments to [Loveland's] biller's declaration show that [Loveland] was billing parents for services provided to Student from July 2010 to July 2012. . . .

[Id. at 9.]  During the oral argument before this Court,

Plaintiffs' counsel represented that Student stopped attending Loveland for reasons unrelated to this case.

Carl Arnemann, Ph.D., testified at the hearing on remand as an expert in school psychology.  He reviewed Student's records and spoke with DOE teachers and staff who knew Student, but he did not examine Student.  Dr. Arnemann testified that speech-language services at Loveland would have been effective for Student, even without the other services that the school provided.  He also testified that it is common for students to receive speech-language services without mental health services. [Id.]

In analyzing the issue on remand, the Hearings Officer stated that compensatory education is an equitable remedy that "is forward-looking, prospective relief to remedy past deficiencies by the DOE." [Id. at 11.]  The Hearings Officer quoted similar language from Hawai`i, Department of Education v. Zachary B. ex rel. Jennifer B., Civ. No. 08-00499 JMS/LEK, 2009 WL 1585816 (D. Hawai`i June 5, 2009).  [Id. at 13.]

The Hearings Officer found that Plaintiffs did not produce any evidence to support their request for reimbursement for two years of Loveland tuition, except that they relied upon testimony that the transdisciplinary program was integrated, and the services included in the program cannot be segregated. Further, the Hearings Officer noted that Student's invoices from

Loveland began in July 2010, although Mother testified that he was not enrolled there until November 2010. There was some dispute about Student's "attendance," "placement," "entering," or "enrollment" dates. Further, the period of the tuition request exceeds the time that Student did not receive speech-language services at his Home School.[4]  [<u>Id.</u> at 11-12.]  The Hearings Officer noted that speech-language services that the DOE offered were also integrated in Student's daily program, but the DOE could separate and quantify the amount of the speech-language services it provided.  [<u>Id.</u> at 13-14.]  The Hearings Officer emphasized that the 9/11/12 Order denied reimbursement, and he stated that:

> To ask for the same amount in compensatory education as the reimbursement amount, without justification other than to state that the services offered cannot be separated, is not seeking forward-looking, prospective relief to remedy past deficiencies by the DOE.  Rather, it is merely asking for reimbursement by calling it compensatory education.

[<u>Id.</u> at 14.]

Based on, *inter alia*, this Court's finding that the August 23, 2010 IEP, which provided sixty minutes per week of

---

[4] During the periods covered by the March 3, 2009 IEP, the February 26, 2010 IEP, and the August 23, 2010 IEP, Student's home school was Kaleiopuu Elementary School ("Home School"). 9/11/12 Order, 2012 WL 3985686, at *1.  By the time of the Decision on Remand, Student was attending Waipahu Intermediate School ("Current School").  [Remand ROA at 2 (Legend to Decision on Remand).]

8

speech-language services, provided a FAPE, other relevant rulings
in the 9/11/12 Order, and the testimony about the services that
Student needs, [id. at 14-16,] the Hearings Officer concluded
that "an appropriate compensatory education award would be 60
minutes per week of counseling, reading, and/or speech-language
services . . . . to be delivered once a week, for 78 weeks, in a
pull-out setting [id. at 17].  The Hearings Officer also found
that Plaintiffs were the prevailing party in the hearing on
remand.  [Id. at 18.]

          The instant appeal followed.

                          **DISCUSSION**

          The legal standards applicable in IDEA appeals are set
forth in the 9/11/12 Order and do not warrant repeating here.
See 2012 WL 3985686, at *10-12.

**I.    Whether an Award of Compensatory Education
        is Limited to Prospective Relief**

          Plaintiffs argue that the Hearings Officer based the
Decision on Remand on an erroneous legal proposition - that a
compensatory education award must be a prospective order of
current and/or future relief.  In other words, according to the
Decision on Remand, the Hearings Officer could not award
reimbursement for services that Student had already received as
compensatory education.  Defendant argues that the Hearings
Officer did not base his rulings on that legal principle.
Defendant contends that the Hearings Officer denied reimbursement

                              9

as compensatory education because it was not warranted under the circumstances of this case.

It is not entirely clear whether the Hearings Officer concluded that reimbursement for prior tuition could or could not be awarded for compensatory education.  The Hearings Officer noted that this district court "has described compensatory education as follows: '[C]ompensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure of a given period of time to provide a FAPE to a student.'"  [Decision on Remand at 13 (quoting Hawaii, Dept. of Educ. v. Zachary B. ex rel Jennifer B., 2009 WL 1585816 (D. Haw. Civ. No. 08-499, 2009)).]  The Hearings Officer also emphasized the lack of justification for the tuition reimbursement amount as a compensatory education award.  [Id. at 14.]  The Hearings Officer ultimately found that the seventy-eight-hour compensatory education award "would compensate Student for the lack of speech-language services in his March 3, 2009 and February 26, 2010 IEPs" and "would remedy any effect upon Student of the Court's finding that the March 3, 2009 and February 26, 2010 IEPs did not appropriately address Student's speech-language needs."  [Id. at 17.]  Viewing the Decision on Remand as a whole, this Court concludes that the Hearings Officer did base his rulings on the principle that a compensatory education award must

10

be prospective and cannot include reimbursement for services received prior to the award.

This Court acknowledges that statements in this district court's orders could be interpreted as limiting compensatory education to prospective awards.  See, e.g., Dep't of Educ., Hawai`i v. R.H. ex rel. K.R., Civil No. 12-00481 HG-RLP, 2013 WL 3338581, at *2 (D. Hawai`i July 2, 2013) ("Compensatory education is prospective injunctive relief . . . ."); 9/11/12 Order, 2012 WL 3985686, at *23 ("'[C]ompensatory education involves discretionary, prospective, injunctive relief . . . .'" (quoting Dep't of Educ. v. Zachary B. ex rel. Jennifer B., Civ. No. 08-00499 JMS/LEK, 2009 WL 1585816, at *9 (D. Hawai`i June 5, 2009))).  There is, however, no United States Supreme Court or Ninth Circuit precedent holding that an award of compensatory education pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii)[5] **must** be prospective.  In fact, the facts of

---

[5] Section 1415(i)(2) states, in pertinent part:

    (2) Right to bring civil action

    . . . .

    (C) Additional requirements

    In any action brought under this paragraph, the court--

        (iii) basing its decision on the preponderance of the evidence, shall **grant such relief as the court**

                (continued...)

at least one Ninth Circuit case indicate that compensatory education can include retroactive reimbursement.  See J.L. v. Mercer Island Sch. Dist., 592 F.3d 938, 946 (9th Cir. 2010) ("The [administrative law judge] awarded reimbursement for twelfth grade as 'compensatory education' based on the district court's holding that K.L. did not receive a free appropriate public education in eighth and ninth grades." (citing Parents of Student W. v. Puyallup Sch. Dist., No. 3, 31 F.3d 1489, 1496 (9th Cir. 1994) (discussing compensatory education))).[6]

        In light of the lack of binding authority on the issue, this Court interprets statements such as the Zachary B. quotation in the 9/11/12 Order as standing for the proposition that compensatory education is **often** prospective, but is not necessarily so.  Accord I.K. ex rel. E.K. v. Sylvan Union Sch. Dist., 681 F. Supp. 2d 1179, 1192 (E.D. Cal. 2010) ("Compensatory education **often** refers to 'educational services ordered by the court to be provided prospectively to compensate for a past

---

        [5](...continued)
                    **determines is appropriate.**

(Emphasis added.)

        [6] In J.L., the Ninth Circuit vacated the district court's orders, including the award of reimbursement as compensatory education, because the Ninth Circuit concluded that the district court "erred in holding that the definition of a free appropriate public education set forth by the Supreme Court in [Board of Education of the Hendrick Hudson Central School District v.] Rowley[, 458 U.S. 176 (1982),] has been superseded[.]"  592 F.3d at 954 & n.11.

deficient program.'" (emphasis added) (quoting <u>G. ex rel. Ssgt RG v. Fort Bragg Dependent Schs.</u>, 324 F.3d 240, 253 (4th Cir. 2003))).  This Court concludes that an award of compensatory education pursuant to § 1415(i)(2)(C)(iii) is not limited to an award of prospective relief and can include reimbursement for services that the student has already received.

To the extent that the Hearings Officer relied on an erroneous legal proposition, this Court cannot give substantial weight to the Hearings Officer's ultimate rulings in the Decision on Remand.  The Decision on Remand, however, does indicate that the Hearings Officer gave careful and impartial consideration to the evidence in the proceeding on remand.  This Court will therefore give substantial weight to the Hearings Officer's findings of fact regarding Student's performance.  This Court will not give deference to the Hearings Officer's application of the law to the facts or to the Hearings Officer's findings regarding the services necessary to compensate Student for the failure to provide a FAPE in the March 9, 2009 IEP and the February 26, 2010 IEP.  This Court now turns to the determination of what is an appropriate compensatory education award based on the record in this case.

## II.  <u>Student's Compensatory Education Award</u>

As stated in the 9/11/12 Order:

> Compensatory education services can be awarded as
> appropriate equitable relief.  20 U.S.C.

§ 1415(i)(2)(B)(iii) ("shall grant such relief as
the court determines appropriate"); Parents of
Student W. v. Puyallup Sch. Dist., 31 F.3d 1489,
1496-97 (9th Cir. 1994).  Appropriate relief is
relief designed to ensure that the student is
appropriately educated within the meaning of the
[Individuals with Disabilities Education Act].
The courts have discretion on how to craft the
relief and "[t]here is no obligation to provide a
day-for-day compensation for time missed." . . .

2012 WL 3985686, at *23 (some alterations in 9/11/12 Order)

(quoting Park ex rel. Park v. Anaheim Union High Sch. Dist., 464

F.3d 1025, 1033 (9th Cir. 2006) (some citations and quotation

marks omitted)).  Equitable considerations, including the conduct

of both parties, are relevant to the determination of an

appropriate compensatory education award.  Parents of Student W.,

31 F.3d at 1496 (quoting School Comm. of Burlington v. Department

of Education, 471 U.S. 359, 374, 105 S. Ct. 1996, 2005, 85 L. Ed.

2d 385 (1985); W.G. v. Board of Trustees of Target Range School

Dist., 960 F.2d 1479, 1486 (9th Cir. 1992)).  Further, this

district court has recognized that a "compensatory education

award is designed to catch a child up to where he or she would be

if the school district had provided a FAPE."  Dep't of Educ.,

Hawai`i v. Ria L. ex rel. Rita L., Civil No. 12-00007 HG-KSC,

2012 WL 5383543, at *5 (D. Hawai`i Oct. 30, 2012) (citing Brennan

v. Regional Sch. Dist. No. 1 Bd. of Educ., 531 F. Supp. 2d 245,

265 (D. Conn. 2008)).

        In the instant case, Student is entitled to

compensatory education because Defendant failed to address his

speech-language needs in the March 3, 2009 IEP and the March 26, 2010 IEP.  9/11/12 Order, 2012 WL 3985686, at *23.  This Court first turns to the issue of whether a prospective award of current and future services at Student's Current School or reimbursement for services that he previously received at Loveland is an appropriate compensatory education award for the educational benefits that Student lost.

As this Court has previously noted, Student made commendable progress at Loveland.  Id. at *22.  Student clearly benefitted from the services he received at Loveland, including the speech-language services.  [Decision on Remand at 9.]  The Hearings Officer found that, based on the record after the hearing on remand, "Student's speech-language needs are not severe."  [Id. at 16.]  He noted Iwashita's testimony that Student had social needs, not communication needs, and that Student did not require speech-language services.  [Id.]  The Hearings Officer also noted that "'neither party is recommending any current or future services as a compensatory education award (with the exception of Respondent's recommendation in the alternative for speech-language services.'"[7]  [Id. at 15 (quoting

---

[7] The Hearings Officer also noted that Mother testified that the September 13, 2012 IEP did not offer Student speech-language therapy services, even though it should have offered those services.  [Decision on Remand at 15.]   The adequacy of the September 13, 2012 IEP, however, is not before this Court at this time.

Respondent's Answering Brief (for proceedings on remand) at 17).]

In July 2010, Student began attending Loveland daily as part of an assessment period.  He officially enrolled at Loveland in November 2010.  [Decision on Remand at 6; Remand ROA, Trans. of 3/27/13 Hrg. ("3/27/13 Hrg. Trans.") at 54.]  For purposes of the equitable compensatory education analysis, this Court finds that it was reasonable for Parents to remove Student from the Home School at that time because Defendant had not provided him a FAPE in the two previous IEPs, and Defendant had not presented an IEP for the upcoming 2010-2011 school year that offered Student a FAPE.  This Court denied Plaintiffs reimbursement under 20 U.S.C. § 1412(a)(10)(C)[8] for the 2010-2011 school year because the August

---

[8] Section 1412(a)(10)(C) states, in pertinent part:

> Payment for education of children enrolled in private schools without consent of or referral by the public agency

> (i) In general

> Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.

> (ii) Reimbursement for private school placement

> If the parents of a child with a disability,
>                                    (continued...)

16

23, 2010 IEP ultimately offered Student a FAPE.  9/11/12 Order, 2012 WL 3985686, at *22.  Although the denial of § 1412(a)(10)(C) reimbursement does not preclude an award of reimbursement as compensatory education pursuant to § 1415(i)(2)(C)(iii), the fact that Student could have received a FAPE at his Home School in the 2010-2011 school year is a relevant equitable consideration.  It is also relevant that, by the time Defendant had an IEP for the 2010-2011 school year which offered Student a FAPE, the school year had already started.  <u>Cf.</u> Remand ROA, Resp.'s Exh. 31 (record of Student's daily attendance for the 2012-2013 school year, which began on July 30, 2012).  This Court also emphasizes that the August 23, 2010 IEP, which offered a FAPE, called for one hour per week of speech-language services.

This Court has considered all of the evidence in the record, but this Court finds the following particularly relevant: the benefits that Student clearly received from Loveland's

---

[8](...continued)
who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

speech-language services; and the fact that there are no identifiable current and future services that Defendant could provide to Student to compensate him for Defendant's failure to provide speech-language services in the March 3, 2009 IEP and the February 26, 2010 IEP.  In light of the evidence in the record, but particularly in light of these two factors, this Court FINDS that reimbursement for the speech-language services Student received at Loveland is the appropriate compensatory education award for Defendant's failure to address Student's speech-language needs in the March 3, 2009 IEP and the February 26, 2010 IEP.  This Court REVERSES the Hearings Officer's award of prospective services.  This Court now turns to the determination of the amount of the reimbursement award.

Plaintiffs argue that they are entitled to full reimbursement for Student's expenses at Loveland from July 2010 through July 31, 2012.  Plaintiffs presented evidence at the hearing on remand that Loveland billed them $329,184.42 for that period.  [Remand ROA, Pets.' Exh. 39 (Decl. of Maurolyn Gurtiza ("Gurtiza Decl.")[9] with exhibits)).]  There is no evidence in the record that Student's full-time attendance at Loveland for two years was necessary to catch Student up to where he would have been if Defendant had addressed his speech-language needs in the

---

[9] Ms. Gurtiza is Loveland's billing administrator, and she prepares the bills for Loveland's students.  [Gurtiza Decl. at ¶ 2.]

March 3, 2009 and February 26, 2010 IEPs in light of the fact Student's IEP sufficiently addressed those needs by providing one hour of speech-language services per week in the August 23, 2010 IEP.  This Court has found that, for purposes of the compensatory education analysis, it was reasonable under the circumstances for Parents to place Student at Loveland in July 2010 and to leave him at Loveland for the 2010-2011 school year even after Defendant offered Student a FAPE in the August 23, 2010 IEP. However, in light of the August 23, 2010 IEP which offered a FAPE, Student's IEP team could have developed an IEP in a timely manner for Student to attend his Home School in the 2011-2012 school year.  Further, at the November 26, 2013 oral argument before this Court, Plaintiffs' counsel acknowledged that Student stopped attending Loveland after July 2012 for reasons unconnected with this case.  Having considered all of the relevant circumstances and events, this Court finds that, to the extent Plaintiffs are entitled to a compensatory education award consisting of reimbursement of Student's Loveland expenses, Plaintiffs are only entitled to expenses associated with the 2010-2011 school year, including expenses associated with the evaluation period beginning in July 2010 through Student's official enrollment in November 2010.[10]

_____

[10] This Court finds that the evaluation period was necessary to the development of Student's educational program for the 2010-
(continued...)

Defendant argues that this Court should reduce the amount requested because: Loveland's fees are not reasonable; the services Loveland provided Student are suspect because Loveland does not follow the professional standards that DOE speech-language professionals follow; and a reimbursement award for compensatory education should only reflect speech-language services that Loveland provided to Student.

Plaintiffs provided evidence of the fees that Loveland charged for Student's program. [Gurtiza Decl. & Exhs.] Defendant has not identified any evidence that Loveland charged different fees or rates for other similarly situated students, nor has Defendant identified any evidence of the rates that other similar programs charge their students. This Court therefore finds that there is no basis to support Defendant's contention that Loveland's rates are unreasonable.

This Court also rejects Defendant's allegation that Loveland's failure to comply with DOE standards renders the quality of Loveland's services suspect. The United States Supreme Court has recognized that "the [20 U.S.C.] § 1401(a)(18) requirements—including the requirement that the school meet the standards of the state educational agency, § 1401(a)(18)(B)—do not apply to private parental placements[,]" and therefore the

---

[10](...continued)
2011 school year at Loveland.

20

Supreme Court rejected the proposition that "reimbursement is necessarily barred by a private school's failure to meet state education standards." <u>Florence Cnty. Sch. Dist. Four v. Carter</u>, 510 U.S. 7, 14 (1993).  This Court therefore rejects Defendant's argument that this Court should reduce any reimbursement award because Loveland does not comply with DOE standards for speech-language professionals.

As to Defendant's final argument, Plaintiffs respond that it is impossible to determine what portion of Loveland's charges are attributable to speech-language services because Loveland provides an integrated program in which the speech-language services that Student received were provided in conjunction with other services, in particular mental health services.  Plaintiffs emphasize that Student's September 13, 2012 IEP included mental health services.  [Remand ROA, Pets.' Exh. 36 (September 13, 2012 IEP).]  They argue that this is evidence that Student required such services, and they urge this Court to include the mental health services that Loveland provided Student in the compensatory education award.

First, as this Court has previously noted, the issue of whether the September 13, 2012 IEP provided a FAPE is not before this Court at this time.  Further, even assuming, *arguendo*, that mental health services were necessary to provide Student with a FAPE in the 2012-13 school year, that is not proof that mental

21

health services were necessary to provide Student with a FAPE in the March 3, 2009 IEP and in the February 26, 2010 IEP.  In the 9/11/12 Order, this Court expressly ruled that Plaintiffs had not carried their burden of proving that the failure to include behavioral/mental health services in the March 3, 2009 IEP and the February 26, 2010 IEP constituted a denial of FAPE.  2012 WL 3985686, at *19-20.  Plaintiffs have not presented any factual or legal grounds that would warrant reconsidering that ruling, and therefore Plaintiffs are not entitled reimbursement for mental health services in the compensatory education award.

The Hearings Officer noted that John Loveland testified that Student had sixty to ninety minutes per week of pull-out speech-language services at Loveland.  [Decision on Remand at 9.] Plaintiffs also presented evidence during the hearing on remand that Student also received speech-language services as an integrated part of the Mental Health Day Treatment program ("Day Treatment Program") and Biopsychosocial Rehabilitation ("BPSR") Program.  The monthly rate for the Day Treatment Program is $6,778.40, and the monthly rate for the BPSR Program is $4,416.00.  [Remand ROA, Pets.' Exh. 38 (Decl. of John Loveland) at 1-3.]  John Loveland also described other components that Student received: Therapeutic Aide Services - Day Treatment, $4,968.00 per month; Therapeutic Aide Services - BPSR, $3,312.00 per month; group therapy, $2.87 per five-minute unit; individual

therapy, $7.47 to $8.04 per five-minute unit; and Intensive
Instruction Services Coordinator ("IISC") Services, $7.47 per
five-minute unit.  Therapeutic Aide Services refer to one-to-one
support aides who assist students in their Day Treatment Programs
and BPSR Programs.  [Id. at 3-5.]  At the hearing on remand, John
Loveland testified that these services are not severable, and all
were appropriate parts of Student's program at Loveland.
[3/27/13 Hrg. Trans. at 70-71.]  He also testified that other
therapies are integrated into individual therapy sessions, and,
for example, even occupational therapy was used to address
Student's language impairment.  [Id. at 71-72.]  Specifically, he
stated "there's no way we can or want to separate those things
out and just have individual therapies for children."  [Id. at
72.]

        This Court respects both John Loveland's professional
opinions and the work that Loveland did with Student.  This
Court, however, expressly concluded that, except for the fact
that they did not address Student's speech/language needs, the
March 3, 2009 IEP and the February 26, 2010 IEP offered him a
FAPE.  2012 WL 3985686, at *20-21.  The compensatory education
award is therefore limited to compensating Student for the loss
of speech-language services during the time periods covered by
those two IEPs.  As previously noted, the August 23, 2010 IEP,
which offered a FAPE, called for the provision of one hour per

23

week of speech-language services.  This Court has also stated that reimbursement for mental health services is not within the scope of the compensatory education award.  While this Court does not question the benefits of integrating the components of Student's program at Loveland, this Court cannot, in fashioning an equitable compensatory education award, grant reimbursement for all of Loveland's services based solely on the integration of speech-language services with the rest of Student's program, including extensive mental health services.  Nor can this Court determine a reimbursement amount that reflects only Loveland's speech-language services.  Even if such information were available, Student could not have continued to attend his Home School while going to Loveland just for the speech-language services that Defendant failed to provide to him.  Thus, having considered all of the evidence in this case, this Court FINDS that an equitable compensatory education award for the failure to address Student's speech-language needs in the March 3, 2009 IEP and the February 26, 2010 IEP is an award of reimbursement of twenty-five percent of Student's Loveland tuition from July 2010 through July 2011.

Plaintiffs presented a billing summary of all of the amounts that Loveland billed for Student.  [Gurtiza Decl., Exh. 39.2.]  Based on the amounts in the billing summary, Loveland billed Plaintiffs $177,342.12 for July 2010 through July 2011.

24

This Court therefore AWARDS Plaintiffs $44,335.53 as a compensatory education award for Defendant's failure to address Student's speech-language needs in the March 3, 2009 IEP and the February 26, 2010 IEP.

### CONCLUSION

On the basis of the foregoing, the Hearings Officer's June 5, 2013 Remanded Decision Subsequent to U.S. District Judge Leslie Kobayashi's September 10, 2012 Amended Order Affirming in Part, and Vacating and Remanding in Part, the Hearings Officer's October 6, 2011 Decision is HEREBY REVERSED.  This Court AWARDS Plaintiffs $44,335.53 as a compensatory education award for Defendant's failure to address Student's speech-language needs in the March 3, 2009 IEP and the February 26, 2010 IEP.  This Court ORDERS Defendant to pay this amount to Plaintiffs, through Plaintiffs' counsel, by no later than **February 10, 2014**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 17, 2013.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**I.T., ET AL. VS. DEPARTMENT OF EDUCATION, STATE OF HAWAII; CIVIL 11-00676 LEK-KSC; ORDER REVISION THE HEARINGS OFFICER'S JUNE 5, 2013 DECISION ON REMAND, AND AWARDING COMPENSATORY EDUCATION**