IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| I.T., by and through his parents Renee and Floyd T., | ) | CIVIL NO. 11-00676 LEK-KSC |
| | ) | |
| Plaintiffs, | ) | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART |
| vs. | ) | PLAINTIFF'S SECOND MOTION FOR ATTORNEYS' FEES AND RELATED NONTAXABLE EXPENSES |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) | |
| Defendant. | ) | |

FINDINGS AND RECOMMENDATION TO GRANT IN PART
AND DENY IN PART PLAINTIFF'S SECOND MOTION FOR
<u>ATTORNEYS' FEES AND RELATED NONTAXABLE EXPENSES</u>

Before the Court is Plaintiff I.T.'s

("Plaintiff") Second Motion for Attorneys' Fees and

Related Nontaxable Expenses ("Motion"), filed December

30, 2013.  On January 13, 2014, Plaintiff filed a

Statement of Consultation ("SOC").  Defendant

Department of Education, State of Hawaii ("Defendant")

filed an Opposition on January 27, 2014.  On February

10, 2014, Plaintiff filed a Reply.

The Court finds this matter suitable for

disposition without a hearing pursuant to Rule 7.2(d)

of the Local Rules of Practice of the U.S. District

Court for the District of Hawaii ("Local Rules").

After reviewing the parties' submissions and the

relevant case law, the Court FINDS and RECOMMENDS that

the Motion be GRANTED IN PART and DENIED IN PART, and

that Plaintiff be awarded **$30,936.11** in attorneys' fees

and tax.

<u>BACKGROUND</u>

Plaintiff commenced this action to appeal an

October 6, 2011 decision issued by Hearings Officer

Richard Young.  Plaintiff sought to have the Hearings

Officer's Decision vacated.  Plaintiff requested that

judgment enter approving his unilateral placement at

Loveland Academy and ordering Defendant to pay his

Loveland tuition and related transportation costs from

November 10, 2012, until placement is changed; to

reimburse him for the cost of evaluations conducted by

Drs. Murphy-Hazzard and Tyson; and to pay reasonable

attorneys' fees, disbursements, and costs.

On July 30, 2012, U.S. District Judge Leslie

Kobayashi issued an Order Affirming in Part and

Vacating in Part the Hearings Officer's October 6, 2011

Decision ("Order").  Following the submission of supplemental briefing, Judge Kobayashi issued an Amended Order Affirming in Part and Vacating and Remanding in Part the Hearings Officer's October 6, 2011 Decision ("Amended Order").  Judge Kobayashi concluded that:

> 1) Defendant violated the Individuals with Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1400 et seq., by failing to evaluate Student for a suspected auditory processing disorder, although this violation did not deny Student a Free Appropriate Public Education ("FAPE") because the evidence ultimately established that he did not have the disorder; and 2) Defendant denied Student a FAPE by failing to address his speech/language needs until formulation of the August 23, 2010 Individualized Education Programs ("IEP").

Amended Order at 2.  As a remedy for the denial of FAPE, Judge Kobayashi granted Plaintiff's request for compensatory education and remanded the matter to the Hearings Officer for a determination of the form of the compensatory education.  Id.  The Hearings Officer's Decision was affirmed in all other respects.

On September 25, 2012, Plaintiff filed a motion for attorneys' fees.  This Court issued a Findings and Recommendation to Grant in Part and Deny in Part Plaintiff's Motion for Attorney's Fees and Related Nontaxable Expenses on November 30, 2012 ("F&R").  Relevant to the instant Motion, this Court concluded that $275.00 was a reasonably hourly rate for John Dellera, Plaintiff's counsel, and that reductions were necessary for excessiveness, clerical/ministerial tasks, inadequate descriptions, block billing, and partial success.  Due to Plaintiff's limited success, the Court reduced the lodestar by 20%.

Notwithstanding Plaintiff's multiple objections to the F&R, U.S. District Judge Leslie Kobayashi overruled the objections and adopted the F&R ("Fee Order").

On June 5, 2013, the Hearings Officer issued a decision awarding compensatory education in the form of additional speech-language services to be provided over 78 weeks and determined that Plaintiff was the prevailing party ("Remand Decision").  Plaintiff was

4

granted leave to file an amended complaint seeking review of the decision on the grounds that reimbursement of Loveland Academy tuition should have been awarded and that the speech-language services should be provided in Plaintiff's IEP.

Plaintiff filed a First Amended Complaint on July 5, 2013.

On July 19, 2013, Defendant filed a motion to dismiss, which Judge Kobayashi denied on July 24, 2013.

Upon review of the Hearings Officer's Remand Decision, Judge Kobayashi issued an Order Revising the Remand Decision ("12/17/13 Order"). Judge Kobayashi found that reimbursement for the speech-language services that Plaintiff received at Loveland was the appropriate compensatory education award for Defendant's failure to address Plaintiff's speech-language needs in the March 3, 2009 IEP and February 26, 2010 IEP. 12/17/13 Order at 18. Thus, while Plaintiff sought reimbursement for all of his Loveland expenses from July 2010 through July 31, 2012, totaling

$329,184.42, Judge Kobayashi limited Plaintiff's compensatory education award to compensate him for the loss of speech-language services during the time periods covered by the March 3, 2009 IEP and February 26, 2010 IEP.  12/17/13 Order at 18-23.  Judge Kobayashi found that an equitable compensatory education award for the failure to address Plaintiff's speech needs in the aforementioned IEPs was an award of reimbursement equal to 25% of his Loveland tuition from July 2010 through July 2011.  Id. at 24.  Plaintiff was awarded $44,335.53 for compensatory education.  Id. at 25.

DISCUSSION

A.   Entitlement to Attorneys' Fees

       Plaintiff seeks an additional $64,736.05 in attorneys' fees and tax based on the outcome of this action.  Even though this Court and Judge Kobayashi previously concluded that his success was limited, Plaintiff believes that the events occurring since the Amended Order demonstrate that his success was not

limited.   Relying on findings in the Amended Order that were already addressed and considered in connection with the first motion for fees to assess Plaintiff's degree of success, Plaintiff contends that Defendant will be more careful to comply with the law because of Judge Kobayashi's decisions.   Specifically, Plaintiff notes that Defendant revised his IEP to included mental health services that his mother requested for years. Plaintiff also cites the reimbursement of a "substantial portion" of his Loveland tuition as evidence of his success.

Defendant does not dispute that Plaintiff is the prevailing party with respect to the additional proceedings, but opposes Plaintiff's renewed claims for the fees previously denied.   Defendant submits that there is no basis to conclude that the 12/17/13 Order changed the amount of success in the original due process hearing and subsequent appeal.   In addition, Defendant asks that the Court apply a percentage reduction to the lodestar for the fees incurred in

connection with the remand and appeal.

Section 1415 of Title 20 of the U.S. Code
provides:  "In any action or proceeding brought under
this section, the court, in its discretion, may award
reasonable attorneys' fees as part of the costs . . .
to a prevailing party who is the parent of a child with
a disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I).  To be
considered a "prevailing party" for attorneys' fees
purposes, "a plaintiff must not only achieve some
'material alteration of the legal relationship of the
parties,' but that change must also be judicially
sanctioned."  <u>Shapiro ex rel. Shapiro v. Paradise
Valley Unified Sch. Dist. No. 69</u>, 374 F.3d 857, 865
(9th Cir. 2004) (quoting <u>Roberson v. Giuliani</u>, 346 F.3d
75, 79 (2d Cir. 2003)) (quotations omitted).

There is no dispute that Plaintiff is the
prevailing party.  However, the Court agrees with
Defendant that the 12/17/13 Order did not change the
degree of Plaintiff's success.  Indeed, Plaintiff
relies in part on Judge Kobayashi's determinations

about the assessment for Central Auditory Processing
Disorder ("CAPD") and denial of FAPE in the March 3,
2009 IEP and February 26, 2010 IEP as evidence of his
success.  But these conclusions were made in the
Amended Order and were already considered by this Court
and by Judge Kobayashi in finding that Plaintiff's
success was limited.

Plaintiff also points to a revision to his IEP
to include mental health services and the reimbursement
of a "substantial portion" of his Loveland tuition as
demonstrative of his success.  Defendant challenges
Plaintiff's argument that this litigation resulted in
the change to the IEP.  Even assuming this litigation
caused such a change to the IEP, that does not alter
the rulings and findings made by Judge Kobayashi in the
Amended Order that success was limited.  As for the
Loveland reimbursement, it is disingenuous for
Plaintiff to claim that he received a substantial
portion of his tuition.  He requested $329,184.42, but
only received $44,335.53.  That he received 13% of his

9

request can hardly be said to constitute reimbursement of a substantial portion of the tuition.  In any event, the proceedings that followed the issuance of the Amended Order, the F&R, and the Fee Order did not alter, nor did it have any meaningful impact on, the Amended Order or this Court's finding that Plaintiff's success was rather limited.  For these reasons, Plaintiff is not entitled to restoration of the 20% reduction previously imposed.  The Court accordingly recommends that the $11,626.12 in fees and tax requested for restoration be denied.

B. <u>Fee Request</u>

In addition to the restoration of previously denied fees,[1] Plaintiff requests $50,720.00 in fees[2]

---

[1]  Herein lies the problem with requesting an award of fees prior to the final disposition of a case.  The Court is forced to evaluate the fee issue without the benefit of knowing the final outcome, and Plaintiff uses the second opportunity to attempt to alter the determination regarding the interim fee award.  Moreover, the Court is required to revisit and consult the underlying papers of the interim fee motion, often more than one year later, in evaluating the final fee request.  Judicial economy is not served by this duplication of effort.  Plaintiff's counsel is advised in future cases to wait until the final disposition of

plus $2,389.93 in tax, for a total of $53,109.93.

Under federal law, reasonable attorneys' fees are generally based on the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." Hensley, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not already been subsumed in the lodestar calculation. See Fischer, 214 F.3d at 1119 (citation omitted).

The factors articulated by the Ninth Circuit in Kerr are as follows:

---

the case to request attorneys' fees so that a complete picture of the degree of success is known to the Court and the parties when assessing the fee issue.

    [2] This figure represents 126.8 hours at a $400.00 hourly rate.

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 70.[3] Once calculated, the "lodestar" is presumptively reasonable. See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 728 (1987); see also Fischer, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

---

[3] Factors one through five have been subsumed in the lodestar calculation. See Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Further, the Ninth Circuit, extending City of Burlington v. Dague, 505 U.S. 557, 567 (1992), held that the sixth factor, whether the fee is fixed or contingent, may not be considered in the lodestar calculation. See Davis v. City & County of San Francisco, 976 F.2d 1536, 1549 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993).

1.   <u>Reasonable Hourly Rate</u>

In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account.  <u>See Webb v. Ada County</u>, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  <u>See id.</u>; <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1405 (9th Cir. 1992), <u>as amended on denial of reh'g</u>, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district"); 20 U.S.C. § 1415 ("Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.").  It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services.  <u>See Jordan v. Multnomah County</u>, 815 F.2d 1258, 1263 (9th Cir. 1987).

13

Plaintiff requests an hourly rate of $400.00 for Mr. Dellera, notwithstanding multiple orders in this district awarding Mr. Dellera a $275.00 hourly rate.[4]  Plaintiff believes that Mr. Dellera's experience, years of experience, a state court decision, and the declaration of Roger Badger support the requested rate.[5]

Defendant counters that Mr. Dellera is not entitled to a $125.00 increase in his previously awarded hourly rate.  Defendant takes issue with

_____

[4]  Plaintiff previously requested a $290.00 hourly rate, an increase from his $275.00 hourly rate, based on inflation.  The Court rejected the argument. Plaintiff concedes Mr. Dellera's rate in this district is $275.00, but argues that it is below prevailing rates as evidenced by a recent Hawaii Supreme Court decision, Kaleikini v. Yoshioka.

[5]  Plaintiff also notes that he has requested a $400.00 hourly rate on a motion for attorneys' fees pending before the Appellate Commissioner for the Ninth Circuit.  The fact that a party seeks a specific amount is not evidence or authority to support the present request.  Just as a request for a $700.00 hourly rate in another case before another court would have no bearing on the Court's determination here, neither does Plaintiff's request pending before the Ninth Circuit. Even if the Ninth Circuit awarded that amount in a different case, it would not necessarily compel this Court to do so.

14

Plaintiff equating Mr. Dellera with Paul Alston.  The Court agrees that there is no legitimate basis to draw comparisons between the two, other than the fact that both have practiced for approximately the same number of years.

Mr. Alston, one of the most prominent and experienced civil litigators in this district, has been awarded among, if not the highest, hourly rates in this district.  However, this Court has limited even his hourly rate to $395.00.  Au v. Funding Group, Inc., 933 F. Supp. 2d 1264, 1274-75 (D. Haw. 2013) (adopting this Court's recommendation to award Mr. Alston a $395.00 hourly rate); Eggs 'N Things Int'l Holdings PTE, Ltd. v. ENT Holdings LLC., Civil No. 11-00626 LEK-KSC, 2012 WL 1231962, at *2 (D. Haw. Mar. 20, 2012), adopted by Eggs 'N Things Int'l Holdings PTE, Ltd. v. ENT Holdings LLC., Civil No. 11-00626 LEK-KSC, 2012 WL 1231992 (D. Haw. Apr. 11, 2012) (finding reasonable an hourly rate of $395 for Mr. Alston).  Other judges in this district have awarded him as much as $540/$567.  Eckerle v.

Deutsche Bank Nat'l Trust, Civ. No. 10-00474 SOM-BMK,

2012 WL 896266, at *3 (D. Haw. Feb. 21, 2012), adopted

by Eckerle v. Deutsche Bank Nat'l Trust, Civ. No.

10-00474 SOM-BMK, 2012 WL 896258 (D. Haw. Mar. 14,

2012); see also Olson v. Lui, Civ. NO. 10-00691 ACK-

RLP, 2012 WL 3686682, at **3-4 (D. Haw. Aug. 27, 2012)

(awarding Mr. Alston a $450 hourly rate).  However,

these rates are excessive.  As the Court explained in

Au v. Funding Group, Inc., it "believes that $450 is

excessive and not in line with the fee awards in this

district.  To ensure consistency within this district,

the Court is guided by the hourly rates generally

awarded in this district, not the amounts charged to

clients, nor rates that appear to be outliers."  Au,

933 F. Supp. 2d at 1275.  Awarding Mr. Dellera an

hourly rate that is higher than the amount typically

awarded to Mr. Alston would be inconsistent with the

awards generally granted by the Court for someone with

Mr. Dellera's experience, skill and reputation.[6]

_____

[6]  The Court's comparison is not based solely on
the small community of IDEA attorneys in this district.

16

Neither the state court opinion regarding hourly rates nor Mr. Badger's declaration are persuasive or binding.  In the F&R, the Court already explained that the declaration of a colleague does not guide or drive the Court's determination about hourly rates.  Moreover, state court determinations about hourly rates have no bearing on the rates awarded in this district court.  However, the Court is guided by and finds persuasive a recently issued order in this district finding reasonable a $300.00 hourly rate for Mr. Dellera.  <u>A.D. v. Dep't of Educ.</u>, Civil No. 12-00307 JMS-KSC, 2014 WL 692910, at *5 (Feb. 20, 2014).  As such, the Court finds that $300.00 is a reasonable hourly rate for Mr. Dellera.[7]

2. <u>Hours Reasonably Expended</u>

Beyond establishing a reasonable hourly rate, a prevailing party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are

---

[7] Had the Court restored the fees previously deducted, the $275.00 rate would have applied, not the $300.00 rate.

17

associated with the relief requested and are reasonably necessary to achieve the results obtained.  See Tirona v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted).  The court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable.  Id. at 637 (citing INVST Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th Cir. 1987), cert. denied, 484 U.S. 927 (1987)).  This Court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case."  Soler v. G & U, Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted).  Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated.  See Gates, 987 F.2d at 1399 (quoting Hensley, 461 U.S. at 433-34).

Plaintiff submits that Mr. Dellera expended 126.8 hours.  He contends that no reduction in the lodestar should be made, but if the Court makes a reduction, it should not exceed 10%.  Defendant asks

that the Court reduce the lodestar by 60% because Plaintiff did not prevail on unrelated claims for mental health services, or alternatively, by 30% because Plaintiff only received 13% of the compensatory education requested.   After careful review of Plaintiff and Defendant's submissions, the Court finds that the following reductions are necessary and appropriate.[8]

        a.   <u>Excessive Hours</u>

        Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated.   <u>See</u> <u>Gates</u>, 987 F.2d at 1399 (quoting <u>Hensley</u>, 461 U.S. at 433-34).   District court findings about matters such as the redundancy of the hours claimed are given considerable deference.   <u>Davis</u>, 976 F.2d at 1544 (quoting <u>Hensley</u>, 461 U.S. at 437).

        The time expended by Mr. Dellera was largely reasonable.   The only reduction that should be made is

---

        [8]   Mr. Dellera employs quarter hour billings for some entries.   Ordinarily, the Court would make reductions for quarter hour billings.   However, given Mr. Dellera's representation that he only billed by the quarter hour when a task took 15 or 45 minutes, the Court shall not make reductions in this case.

for the 0.7 hours expended on 2/8/14 researching billing by the tenth of an hour.  The Court did not request briefing on the matter; it only directed a response about Mr. Dellera's billing practices.  Nor did Mr. Dellera submit any arguments regarding billing increments.  For these reasons, the Court reduces the hours by 0.7.

      b.  <u>Clerical or Ministerial Tasks</u>

      Mr. Dellera's time entries on 12/8/12 and 3/16/13 reflect billing for clerical/ ministerial work, i.e., reviewing court filings and other notices and selecting exhibits.  Such tasks are non-compensable. "[C]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate."  <u>Jeremiah B. v. Dep't of Educ.</u>, Civil No. 09-00262 DAE-LEK, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (citing <u>Sheffer v. Experian Info. Solutions, Inc.</u>, 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003)).

      The following is a list of tasks previously deemed clerical or ministerial in this district and

therefore deemed non compensable:

> reviewing Court-generated notices;
> scheduling dates and deadlines;
> calendering dates and deadlines; notifying
> a client of dates and deadlines; preparing
> documents for filing with the Court;
> filing documents with the Court; informing
> a client that a document has been filed;
> personally delivering documents; bates
> stamping and other labeling of documents;
> maintaining and pulling files; copying,
> printing, and scanning documents;
> receiving, downloading, and emailing
> documents; and communicating with Court
> staff.[9]

Haw. Motorsports Inv., Inc. v. Clayton Group Servs.,
Inc., Civ. No. 09-00304 SOM-BMK, 2010 WL 4974867, at *5
(D. Haw. Dec. 1, 2010), adopted by Haw. Motorsports
Inv., Inc. v. Clayton Group Servs., NC, Civ. No.
09-00304 SOM-BMK, 2010 WL 5395669 (D. Haw. Dec. 22,
2010) (also deeming clerical identification and
organization of exhibits); see also, e.g., Yamada v.
Weaver, Civil No. 10-00497 JMS-RLP, 2012 WL 6019363, at
*10 (D. Haw. Aug. 30, 2012), adopted in pertinent part
by Yamada v. Weaver, Civil No. 10-00497 JMS-RLP, 2012
WL 6019121 (D. Haw. Nov. 30, 2012) (deeming clerical

---

[9] This list is a sampling and is not exhaustive.

21

work completed on table of authorities).

Mr. Dellera expended 3 hours on clerical tasks. The entire 3 hours may not have been spent on the identified clerical tasks, but because the clerical tasks were blocked billed[10] with other tasks for both the 12/8/12 and 3/16/13 entries, the Court is unable to reasonably apportion the time.  Therefore, the entire time entry should be excluded and 3 hours should be

---

[10]  "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."  Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations and quotation marks omitted).  Block billing entries generally fail to specify a breakdown of the time spent on each task.

District courts have the authority to reduce hours that are billed in block format because such a billing style makes it difficult for courts to ascertain how much time counsel expended on specified tasks.  Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).  See also id. (citing Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness")); see also Hensley, 461 U.S. at 437 (holding that applicant should "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims")).

excluded from Plaintiff's fee award.

Based on the foregoing, the Court finds that Mr. Dellera reasonably expended 123.1 hours.

c.  <u>Reduction for Partial Success</u>

Now that the Court has assessed the reasonableness of the time entries submitted by counsel, the Court will address Defendant's request for an imposition of a reduction for failure to prevail on unrelated claims and/or for lack of success.  Plaintiff contends that a reduction is inappropriate because his degree of success has improved materially with the compensatory education award and that under Ninth Circuit precedent, the Court is only authorized to impose a 10% reduction if it is convinced that the lodestar generates an excessive award.  The Court disagrees.

The Court already thoroughly addressed the reduction issue in its F&R and adopts and incorporates the same analysis here.  A plaintiff's degree of success should be considered in awarding fees in IDEA

cases.  <u>Aguirre v. Los Angeles Unified Sch. Dist.</u>, 461
F.3d 1114, 1119 (9th Cir. 2006).  However, there is no
precise rule or formula for making determinations about
fee awards based on varying degrees of success.  <u>Id.</u> at
1121 (9th Cir. 2006) (quoting <u>Hensley</u>, 461 U.S. at
436).  "The district court may attempt to identify
specific hours that should be eliminated, or it may
simply reduce the award to account for the limited
success.  The court necessarily has discretion in
making this equitable judgment." <u>Id.</u> (quoting <u>Hensley</u>,
461 U.S. at 436-37).

> [T]he extent of a plaintiff's success is a
> crucial factor in determining the proper
> amount of an award of attorney's fees
> under [the IDEA].[11]  Where the plaintiff
> has failed to prevail on a claim that is
> distinct in all respects from his
> successful claims, the hours spent on the
> unsuccessful claim should be excluded in
> considering the amount of a reasonable
> fee.  Where a lawsuit consists of related
> claims, a plaintiff who has won
> substantial relief should not have his
> attorney's fee reduced simply because the

---

[11] <u>Aguirre</u>, 461 at 1121 (holding that attorneys'
fees awarded under 20 U.S.C. § 1415 are governed by the
standards set forth in Hensley and its progeny).

> district court did not adopt each
> contention raised.  But where the
> plaintiff achieved only limited success,
> the district court should award only that
> amount of fees that is reasonable in
> relation to the results obtained.

Hensley, 461 U.S. at 440.  Where, as here, Plaintiff's

claims for relief involve a common core of facts and

are based on related legal theories, the court "should

focus on the significance of the overall relief

obtained by the plaintiff in relation to the hours

reasonably expended on the litigation."  Id. at 435.

In exercising its discretion, the Court

concludes, as it did before, that Plaintiff's fee award

should be reduced by 20%, in addition to the

abovementioned reductions.  Although Plaintiff is the

"prevailing party," his degree of success has not

materially changed since the F&R.  As before, Plaintiff

only prevailed on one narrow issue.  The remand and

appeal resulted in an award of compensatory education,

but this Court was already aware of and considered the

fact that Plaintiff would receive an award of

compensatory education when it previously determined

that a 20% reduction was appropriate.

> Considering that the claims in this case involve a common core of facts and related legal theories, and given the rulings highlighted above, the Court finds that the 20% reduction is appropriate.  The Court has focused on the significance of the overall relief obtained by Plaintiff in relation to the hours expended in this litigation and the administrative action. Although Plaintiff will obtain some form of compensatory education award, it will be limited, and it is far less than the relief requested.  Therefore, the Court recommends that the lodestar be reduced by 20%.

F&R at 26-27; Fee Order at 13 ("Given Plaintiff's degree of success, the Court agrees that a 20% reduction is appropriate, and not arbitrary.  Although Plaintiff understandably feels that counsel is entitled to a greater award, the Court does not agree that the F&R 'seriously understates the degree of Plaintiff's success.'").  The $44,335.53 compensatory education award, which amounts to 13% of the amount requested by Plaintiff, cannot be said to represent a material improvement in Plaintiff's degree of success.  The result of the remand and appeal was that Judge

26

Kobayashi assigned a monetary value to the compensatory education award that this Court already anticipated Plaintiff would receive.  However, as the Court also expected and duly noted, Plaintiff's award was limited.  Therefore, while Plaintiff prevailed and did obtain some relief, the relief was limited and any fee award must be reduced to reflect his limited success.

Plaintiff insists that the Court is limited to imposing a 10% reduction.  That is true only if the Court does not explain the reduction.  "'[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation.'  In all other cases, however, the district court must explain why it chose to cut the number of hours or the lodestar by the specific percentage it did." Gonzalez v. City of Maywood, 729 F.3d 1196, 1203 (9th Cir. 2013) (internal citation omitted) (alteration in original).  Here, the Court has thoroughly explained why it elected to impose a 20% reduction here and in the F&R; it has

not arbitrarily imposed a reduction without explanation.  See id. (citing Schwarz v. Sec'y of Health and Human Servs., 73 F.3d 895, 899-900, 906 (9th Cir.1995) (affirming 75% cut to the number of hours billed where plaintiff succeeded on only 25% of his claims); Welch, 480 F.3d at 948 (affirming 20% cut to hours where fee applicant block billed, because court relied on third-party report that block billing increased number of hours by 10-30%)).  Thus, the Court is not limited to the 10% "haircut" reduction identified by the Ninth Circuit.

Plaintiff erroneously argues that the Ninth Circuit has limited across-the-board cuts to 10% in the number of hours or of the lodestar amount when entries are not disallowed individually.  First, as the Court discussed above, there is no restriction on percentage reductions when the Court explains why it has made the reduction.  Second, the fact that specific time entries are excluded and a percentage reduction is made to the remaining compensable hours for partial success does

28

not result in a double reduction.[12]  In fact, the method
employed by this Court is both necessary and
appropriate.  The reductions made for excessiveness and
clerical work are reductions regularly made by this
Court in all cases.  Plaintiff is not allowed to
recover for tasks that are found to be non compensable.
By eliminating these tasks from the total compensable
hours, the Court makes a reduction for partial success
only to the compensable hours, not to the compensable
and non compensable hours.  The Court has not made a
reduction on top of a reduction; it has separated and
distinguished the reductions.  No prevailing parties
are entitled to recover non compensable hours.  The
question remaining for the Court after its exclusion of
specific time entries is whether Plaintiff is entitled

---

[12]  To the extent Plaintiff argues that the Court's
double reduction (for individual time entries and
percentage reduction of compensable hours) justifies
the restoration of the hours excluded in the F&R and
Fee Order, the argument is barred and rejected.  Judge
Kobayashi already concluded that this Court's
reductions were proper (both the individual time entry
reductions and the percentage reduction) and there is
no basis to restore the previous reductions pursuant to
this newly raised argument.

to the entirety of the compensable hours.  Under the facts of this case, he is not.

If Plaintiff had achieved greater success, the compensable hours would simply be multiplied by Mr. Dellera's hourly rate and the resulting lodestar would be the fee award.  But because Plaintiff's success was not as significant as he believes, and it is impossible for the Court to identify specific time entries to be excluded on the basis of partial success, the compensable hours must be reduced by a percentage.  The Court has reduced the hours in the most precise method possible based on the time entries.  Accordingly, the 123.1 compensable hours are reduced by 20% and 98.48 hours were reasonably incurred.

C.   Total Fee Award

Based on the foregoing, the Court finds that Plaintiff has established that he is entitled to $29,544.00 in fees (98.48 hours x $300.00) plus $1,392.11 in tax, for a total of **$30,936.11**.

CONCLUSION

In accordance with the aforementioned discussion, this Court FINDS and RECOMMENDS that Plaintiff's Second Motion for Attorneys' Fees and Related Nontaxable Expenses, filed December 30, 2013, be GRANTED IN PART and DENIED IN PART.  The Court recommends that the district court award Plaintiff **$30,936.11** in attorneys' fees.

IT IS SO FOUND AND RECOMMENDED.

DATED: Honolulu, Hawaii, February 27, 2014.



_____
Kevin S.C. Chang
United States Magistrate Judge

I.T. v. DEPARTMENT OF EDUCATION, STATE OF HAWAII; CIVIL NO. 11-00676 LEK-KSC; FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S SECOND MOTION FOR ATTORNEYS' FEES AND RELATED NONTAXABLE EXPENSES